All right, we're on United States vs. SWARTZ. And can you all hear us or hear me? Yes, your honor. Yes, your honor. OK, so let's see. All right, Ms. Villasenor Grant. Yes, your honor. You may proceed. Thank you. Shelby Villasenor Grant, Federal Defenders, on behalf of defendant appellant Pauline Swartz. Your honors, in this case the district court erred in allowing the government to present evidence of statements that Ms. Swartz made while she was the subject of custodial interrogation and was not read her Miranda rights. In this case, she was at her office when two agents entered. And the most compelling factor to look at, and you can see that from looking at the Lee case, United States vs. Lee, as well as United States vs. Estrada Lucas, is that she was presented with evidence of her guilt because one of the agents showed her a bank statement which showed deposits and withdrawals being made. And in both the Lee case and the Estrada Lucas case, that's where custody turns. In Estrada Lucas, Ms. Lucas was presented with the jewelry that was found in her bag. It was dumped out on the counter, and then the questioning proceeded from there. And she was found to be in custody, even though this was at the border, which is this place typically where you're not found to be in custody. In the Lee case, the defendant actually got into the car of the police officers voluntarily and spoke with them. And that was found to turn into a custodial interrogation when he was confronted with conflicting facts that they had against the story that he gave. So I think that that fact especially is important when weighing whether Ms. Swartz was in custody or not. Ms. Villasenor, how can you – this is Judge Bybee – how can you – Ms. Swartz is spoken to at her place of work, which also happens to be a front office attached to her place of residence. They're speaking to her across the counter. They are – they haven't drawn any weapons. There's no show of force here. She has a door behind her. When they first approach her, they ask if they could talk to her. She does not now come back later. Now, if this was really a situation in which she was not free to leave, the agents wouldn't have left. They leave. They leave. They leave the office. They say, sure, we'll come back and talk to you. And they come back and talk to her at her convenience. That's a little difficult to say that this is a person who's going to regard herself as in custody. Well, I think what's important to look at is the fact that they did come to her. The Hayden case, which I believe is what the government's going to rely on, is where the defendant went to the FBI office two different times and was told she was free to leave. In this case, Ms. Swartz was never told that she was free to leave. But where would she have gone? She was at work. She was in front of her apartment. Well, nor she was never told that she could cease the questioning, I think, is the more important point. Because the agents came to her, said that they needed to talk to her, and they did return after she said that she couldn't speak with them right now, I think that that showed that she was going to have to talk to them one way or the other, in her view. Even in the PSR, Ms. Swartz was not shy in dealing with the probation officer in declining to answer certain questions, for example, about her family situation. There were a number of instances in the PSR where she said, I don't care to discuss that any further. So she doesn't seem to be shy about telling people she doesn't want to talk about it. Well, in the probation office setting, I was sitting next to her. She did have her counsel present, and so I think that takes it into a totally different area. In our office, it was her and two agents, and that was it. And they showed her these accounting records and then proceeded to ask her about this over the course of approximately 40 minutes, where they even wrote out a statement and had her sign it. And I think that that especially goes to show that it was more of a custodial nature than one would normally think when someone's questioned at their place of work. Well, but I think about the Matheson case, Oregon v. Matheson, where they have them down at the police station even, and they present them with some evidence of guilt. And in that case, the Supreme Court said, no, that, you know, everything is a little coercive when you're being asked about a potential crime that you committed, but there was no custodial situation there. And that's a far cry from being at your apartment and place of work. So how would you reconcile this with Matheson? Well, I think, and I could be wrong on this, but I think that in the Matheson case, he had come down there himself and had driven down there himself and gone to meet with the officers. And I think in this situation, because they came to her, it was kind of like where exactly the question is, where would she go, as was posed to me earlier. There's really nowhere she could have gone. The officers were right there, and there was nowhere else that she could have possibly gone to avoid speaking with them. Well, she didn't have to speak to them. I mean, that's the point, it seems to me, under the rule that you're suggesting. You would never be able to go out and, you know, have a kind of a stop-and-chat with somebody. You would have to bring them down to the station, and even then it wouldn't be custodial. Well, I think a stop-and-chat is different than a 40-minute questioning at a person's place of work when, you know, they're being shown all of these documents, and there's a case file that the agent has, and the agent's repeatedly asking questions about the Social Security, and did she know that her mom was receiving Social Security, and going on and on. I think that when you take everything into consideration, not just the fact that she was presented with evidence of her guilt, but that there were two agents to the one woman, and the fact that the questioning took approximately 40 minutes, that that takes it into the custodial range. And I don't think that there's any argument on behalf of the government that it's not interrogation, because obviously she was asked questions about the Social Security and things of that nature, and she did respond to those questions. All right, anything else? No, Your Honor, I'll reserve the rest of my time for rebuttal. All right. Thank you. We'll hear from the government. Good afternoon, Your Honor. This is Ann Carey with the United States Attorney's Office on behalf of the appellee of the United States, and thank you for scheduling this oral argument. Yeah, are you feeling all right? It's my first day back. Okay. So I appreciate the ability to sit down. With response to the argument that has been raised by the appellant in this case, both of the arguments actually that were raised by the appellant in her brief are based on a false premise in the government's view that she was old, infirm, and susceptible to persuasion. And the reason that I say that is from reviewing the facts and circumstances of the case and also the brief. And the facts of the case, which were reviewed by the two triers of facts, which would be Judge Singleton for the motion and also the jury, simply just don't bear it out. The statement, as Your Honor noted, took place in her place of business, which also had a back door allowing her access to her apartment. She had the ability to do that at any time. Not only did the agents not threaten her, Ms. Swartz even conceded in her testimony at the evidentiary hearing at Excerpt of Record 79, the agents seemed to be nice, at least at first. They described the conversation they had with her as just an ordinary conversation. And while there was questioning, it certainly didn't rise to the level of an interrogation. I think that the trier of facts, Judge Singleton, also made a credibility call based on the appellant's demeanor and behavior, and there is no contrary evidence that he made a bad call. There was also a point that was raised in the brief about Ms. Swartz's medical issues. However, the court will be able to note that at the time she testified in the suppression hearing, she indicated, first of all, that she had a position of authority and responsibility, and in fact had not been hospitalized for some period of time. I think the totality of the circumstances in this case indicate that it was not a custodial interrogation, that she had the ability to leave and elected not to do so. Okay. Anything else? Not unless the court has any further inquiries. Questions? Questions? All right. Rebuttal? Thank you, Your Honor. Just to refer to two points. The first is that it was an amenable conversation, and as the court knows, that's only one factor to take into consideration. And I think that, again, looking at the totality of everything, that this was, in fact, a custodial situation. Also, regarding her ability to leave because the back door led to her apartment. The ability to leave is one thing, but it's whether the person feels they are free to leave that is the question. And she obviously did not feel that way. The agents had left and returned, and it was at her request that they did come back. They did come to her place of work. And I don't think that there's any reason for her to believe that if she went to her home, that they wouldn't have come there as well. But there isn't anything in the record specifically on that. I think that the most important cases, as I stated earlier, are the Lee case and the Estrada Lucas case, and that both of those cases show that in a situation such as this, Ms. Worth would feel that she was in custody and not free to leave, and that a custodial interrogation did take place. Okay. That's it, huh? Any further questions? No. Okay. Good argument on both sides, and we appreciate it. And the Court will recess until 9 a.m. tomorrow morning. And thank you. Thank you very much, Your Honor. All rise. The Court will recess just a moment, Your Honor.
judges: Pregerson, McKeown,bybee